# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 21-CR-10338-AK |
| PATRICK JOSEPH, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO SUPPRESS**

**ANGEL KELLEY, D.J.**

Defendant Patrick Joseph ("Joseph") is charged with wire fraud, bank fraud, and conspiracy to commit bank fraud and wire fraud. He has moved to suppress wire and electronic communications intercepted by the government pursuant to warrants issued under 18 U.S.C. §§ 2510, et seq. ("Title III"), contending that the warrants and surveillance violated the Fourth Amendment and the statutory requirements of Title III, and requests an evidentiary hearing to resolve the motion. For the following reasons, the motion is **DENIED**.

**I.      BACKGROUND**

In February 2020, the U.S. Postal Inspection Service began an investigation into a possible drug-trafficking organization shipping cocaine from Puerto Rico to Massachusetts and Rhode Island. During that investigation, Joseph was identified as a leader within that group. Agents conducted physical surveillance of Joseph and seized several packages containing cocaine connected to Joseph and his associates. After further traditional investigative efforts, the

1

government applied for a Title III wiretap of three telephones it believed were linked to Joseph and his associates.

The Court found that there was probable cause to believe that Joseph, along with several others, was engaged in certain criminal conduct and that the identified telephones were being used to facilitate that conduct. [Dkt. 72-1 at 1-2]. Based on this finding, in March 2021, the Court issued an order authorizing the interception of wire and electronic communications from three telephones, including one belonging to Joseph.

Interceptions of Joseph's telephone calls under the initial order began on March 23, 2021, and were terminated on April 21, 2021. [Dkt. 72-4 ¶ 29]. During the monitored calls, Joseph allegedly discussed schemes for importing cocaine from the Dominican Republic with several co-conspirators. [Id. at 23-52]. Agents also overheard him discussing what seemed to be a scheme to fraudulently obtain Payroll Protection Program ("PPP") loans. [Id. at 52-54].

On April 28, 2021, the Court issued a second order authorizing the continued monitoring of Joseph's telephone number. In support of the application for that order, Powers submitted a second affidavit that detailed some of the information that investigators had gleaned from the surveillance authorized by the initial order [Dkt. 72-4], including information about the apparent PPP loan scheme. [Id. ¶¶ 71-72]. On that basis, the Court found there was probable cause to believe Joseph was engaged in wire fraud, in violation of 18 U.S.C. § 1343. [Dkt. 72-2 at 1-3).

The extension order authorized surveillance of two of the same telephones that were the subject of the initial order, targeting the same offenses as well as the wire fraud offense. [Id.]. The government resumed surveilling the target telephones on April 28, 2021, and continued until Joseph was charged on May 26, 2021. Thus, two cases against Joseph arose out of the same wiretap orders: one related to a drug conspiracy and another related to PPP fraud.

On May 26, 2021, Joseph was charged by complaint for conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846. He was then indicted on July 28, 2021, with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and cocaine base, in violation of 21 U.S.C. § 846. See United States v. Joseph et al., 1:21-cr-10231-FDS (D. Mass. 2021). Joseph was then separately indicted for conspiracy to commit bank and wire fraud on November 22, 2021, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18. U.S.C. § 1343, and bank fraud, in violation of 18 U.S.C. § 1344. [Dkt. 1].

In the drug conspiracy-related case before Chief Judge Saylor, Joseph filed a Motion to Suppress "all wire and electronic communications and derivative evidence" pursuant to the Court's Title III orders. Mot. to Suppress at 1, Joseph, 1:21-cr-10231-FDS (D. Mass. 2021). He argued that the orders and surveillance were unlawful because 1) they were general warrants; 2) they failed to comply with Title III requirements; 3) the government failed to reasonably minimize non-pertinent calls; and 4) the extension order improperly added the target offense of wire fraud. Id. Joseph contended that those violations warranted suppression of all evidence collected during the government's wiretap, and he also requested an evidentiary hearing. Chief Judge Saylor heard Joseph's motion on January 19, 2024. He subsequently entered an order denying the motion on February 6, 2024. Joseph, 2024 WL 456827.

The wiretap orders and related evidence at issue before Chief Judge Saylor are the same ones at issue here, so on December 4, 2023, Joseph filed a nearly identical Motion to Suppress in this case. [Dkt. 72]. At the January 17, 2024, status conference, defense counsel recommended that the Court wait until Chief Judge Saylor decided the other motion to suppress, which had been filed earlier. Although the focus in this case is on the PPP calls rather than the drug

3

conspiracy-related ones, Joseph acknowledged he was making the same legal argument in both motions to suppress. After Chief Judge Saylor denied the motion to suppress in Joseph, 2024 WL 456827, at the pre-trial conference in this case held on February 7, 2024, Joseph sought to make two distinctions from the drug conspiracy-related case. First, he argued that the initial Title III order failed the particularity requirement because it allowed monitoring of communications "otherwise criminal in nature." Second, the government's delay in obtaining an extension order caused Joseph substantial prejudice. During the one-month delay, the government continued to monitor numerous incriminating calls related to the PPP fraud, which he thought would most likely be brought into evidence at trial.

Because all of the communications and derivative evidence resulting from the Title III orders are the same here as in Joseph, 2024 WL 456827, and Joseph filed nearly identical motions to suppress in both cases, the same logic and reasoning applies in both instances. Therefore, this Court adopts Chief Judge Saylor's opinion in full but will further address the two points Joseph raised at the pre-trial conference below.

## II. DISCUSSION

### A. The Title III Orders

Joseph contends that the wiretap orders are facially invalid because they permit agents to continue listening to calls that do not necessarily relate to the target offenses but are "otherwise criminal in nature." [Dkts. 72-1, 72-2]. In other words, Joseph argues that the evidence against him should be suppressed because the government improperly monitored calls evidencing "other crimes" not listed in the orders authorizing electronic surveillance in violation of 18 U.S.C. § 2517(5). However, the Title III orders permit what the statute already specifically allows:

> When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications

4

relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used . . . .

18 U.S.C. § 2517(5). See United States v. Gambale, 610 F. Supp. 1515, 1531 (D. Mass. 1985) (finding that "since the interception of evidence related to the offenses named in the surveillance order was conducted lawfully, evidence of other crimes could be intercepted 'incidentally' during the course of lawfully executing the order authorizing surveillance."); see also United States v. McKinnon, 721 F.2d 19, 23 (1st Cir. 1983) ("Evidence of crimes other than those authorized in a wiretap warrant are intercepted 'incidentally' when they are the by-product of a bona fide investigation of crimes specified in a valid warrant."); United States v. Carey, 836 F.3d 1092, 1093-94 (9th Cir. 2016) (holding that the police can "use evidence obtained in 'plain hearing' when they overhear speakers unrelated to the target conspiracy while listening to a valid wiretap, without having complied with the [Title III] requirements of probable cause and necessity as to those specific speakers."

The interception of an unspecified offense is only unlawful "when it is motivated by an illicit purpose—e.g., 'subterfuge.'" United States v. London, 66 F.3d 1227, 1234 (1st Cir. 1995). The court did not find that there was any subterfuge in the initial interception application, and Joseph never made any argument that there was. Gambale, 610 F. Supp. at 1532 (stating that a "judge's approval of an extension, when presented with the above information, constitutes a determination that the original order was lawfully obtained, that it was sought in good faith and not as a subterfuge search, and that the 'other crimes' conversations ha[d] been incidentally intercepted."). Therefore, the Title III orders did not impermissibly allow agents to listen to criminal calls that may have been unrelated to the target offenses.

### B. The Extension Order

Joseph next contends that the government failed to apply for a new Title III warrant that included wire fraud as a target offense "as soon as practicable" between first learning of its possibility on March 24, 2021, until the extension order on April 28, 2021. Therefore, Joseph argues that there was approximately a one-month delay in which the government kept listening to PPP fraud-related calls before it sought an extension order. To require an immediate amendment to the initial order would ignore the existence of 18 U.S.C. § 2517(1), (2), which explicitly allow the use of evidence of other criminal offenses without an amendment to the order of authorization. Joseph contends, however, that this delay prejudiced him, as those calls are directly related to the offenses he is charged with in this case. At the pre-trial conference held on February 7, 2024, the Court gave Joseph leave to file supplemental briefing to distinguish this motion to suppress from the one made in the drug conspiracy-related case before Chief Judge Saylor, and to elaborate on why he believes he would face more prejudice here. Joseph did not file anything more and did not provide any case law to support his contention at the pre-trial conference. Nor did he make this argument or distinction in the pending Motion to Suppress before this Court. As Judge Saylor pointed out, "the bare assertion of a violation cannot by itself warrant suppression." Joseph, 2024 WL 456827, at *5.

For the same reason Chief Judge Saylor stated, the Court finds that an evidentiary hearing is not warranted here, and the request is denied.

6

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Wire and Electronic Communications [Dkt. 72] is **DENIED**.

**SO ORDERED.**

Dated: February 14, 2024                                /s/ Angel Kelley
                                                        Hon. Angel Kelley
                                                        United States District Judge